**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SATISH RAMACHANDRAN, | Case No. 20-cv-03693-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTIONS TO DISMISS** |
| BEST BEST & KRIEGER, et al., | [Re: ECF 43, 55, 57] |
| Defendants. | |

This is a neighbor dispute gone horribly wrong that has now spawned three lawsuits, two in federal court and one in state court. Plaintiff Satish Ramachandran has sued Los Altos city employees Kirk Ballard, Christopher Jordan and David Kornfield (collectively, "City Employee Defendants"), attorneys Christopher Diaz, who serves as Los Altos City Attorney by contract with the City, Christina Hickey, and the law firm Best Best & Krieger (collectively "BBK Defendants"), and Pamela Jacobs, his neighbor. Before the Court are three motions to dismiss, one from each respective group of Defendants. The Court GRANTS the motions to dismiss, and the dismissal of all claims is WITH PREJUDICE.

**I.  BACKGROUND**

Mr. Ramachandran immigrated to the United States from India in 1986. Am. Compl. ("FAC") ¶ 3, ECF 92.[1] He has owned his current home in the City of Los Altos ("the City") since 1993. *Id.* This saga began in 2013, when Mr. Ramachandran sought to complete several home

---

[1] Long after briefing completed on Defendants' motions to dismiss, Mr. Ramachandran sought leave to file an amended complaint. *See* Mot., ECF 85. The Court granted that motion on December 24, 2020, and, in order to avoid any prejudice to Defendants, retained the hearing date for the current motions and only considers the amendments to relate to the issue of futility of amendment. *See* Order, ECF 91. The malicious prosecution claim in the amended complaint in not before the Court on these motions.

improvement projects. *Id.* ¶ 17. Mr. Ramachandran met with Defendants Ballard and Kornfeld, employees in Los Altos's Building Department, to discuss whether his projects required permits under the Los Altos Municipal Building Code ("building code") *Id.* ¶¶ 7-8, 17-18. Relying on the information Defendants Ballard and Kornfeld provided him, Mr. Ramachandran hired contractor Adam Nicolas Conchas ("Contractor Conchas") on April 19, 2013, to complete the improvements. *Id.* ¶19. Part of Mr. Ramachandran's agreement with Contractor Conchas included obtaining necessary permits, which Contractor Conchas apparently never did. *Id.* ¶ 21. Contractor Conchas abandoned the project on or about May 2, 2013, and misconduct concerning this project resulted in Contractor Conchas losing his license in proceedings in front of the Contractors State Licensing Board. *Id.* ¶¶ 19, 22.

Unbeknownst to Mr. Ramachandran at the time, Contractor Contras had filed a written complaint with the Building Department on May 8, 2013, in which he represented that he was working for Mr. Ramachandran and that Mr. Ramachandran was completing work on his property without permits. FAC ¶ 22. On June 25, 2013, Defendant Kornfeld—according to Mr. Ramachandran—caused an assistant city planner to send Mr. Ramachandran a letter claiming that his property was less than 15,000 square feet, a statement Mr. Ramachandran claims Defendant Kornfeld knew was false. *Id.* ¶ 28. On July 12, 2013, Defendant Jacobs, Mr. Ramachandran's neighbor, sent Defendant Ballard an email stating, in relevant part, "I spoke with you Monday morning regarding the illegal shed which my neighbor Satish Ramachandran is building…I had hoped that you all would have contacted him and stopped work." *Id.* ¶ 29. Defendant Ballard responded five days later on July 17, 2013, letting Defendant Jacobs know that the issue was being addressed. *Id.*

On or about July 12, 2013, a city employee who is not a party to this case came to Mr. Ramachandran's property regarding the shed. FAC ¶¶ 30-31. The interaction was hostile. *Id.* Mr. Ramachandran accuses the city employee of asking him, "Why do you live here? Why don't you move to San Jose?" before yelling at him, "Go back to India!" *Id.* ¶ 31. Immediately after the city employee left, Mr. Ramachandran contacted Los Altos's Planning Department to report the hostile, aggressive, and racist behavior. *Id.* ¶ 32. After this complaint, Defendant Ballard and

another city employee came to Mr. Ramachandran's property, and a "belligerent" Defendant Ballard informed Mr. Ramachandran that the shed must be removed because it had been built without a permit. *Id.* ¶ 34. On this visit, Defendant Ballad also told Mr. Ramachandran that the city employee that he accused of racist behavior was a "good employee," which Mr. Ramachandran interpreted as attempting to persuade him that his complaint was misguided. *Id.* ¶ 35. Mr. Ramachandran further interpreted this visit from Defendant Ballard as retaliation for reporting the racist behavior. *Id.* ¶ 35. On July 17, 2013, Mr. Ramachandran filed a formal complaint with the city manager alleging "bias, discrimination, misconduct, and abuse" against Defendant Ballard and other nonparties. *Id.* ¶ 36. He also contacted the Los Altos City Counsel about the conduct of the Building Department employees. *Id.* Mr. Ramachandran eventually learned that no permit was required for his shed, but Defendant Kornfield informed him that it needed to be farther back from his property line. *Id.* ¶ 37. Mr. Ramachandran complied and moved the shed. *Id.* ¶ 38.

In late 2013, Mr. Ramachandran filed a formal complaint with the City regarding illegal home improvements and construction by his neighbor, Defendant Jacobs. FAC ¶ 45. The Jacobs family is white. *Id.* Mr. Ramachandran asserts that the City has never addressed these violations. *Id.* Mr. Ramachandran also alleges that the City approved non-compliant projects at the Jacobs's residence. *Id.* ¶¶ 49-57. He continued to complain to the City to no avail. *Id.* ¶¶ 58-59, 61. He filed a formal appeal of a permit issued to the Jacobs family on October 11, 2017, but the City never responded. *Id.* ¶ 73.

Mr. Ramachandran continued to have disagreements with the City regarding his home improvement projects and the applicable permits. FAC ¶¶ 39-41. In May 2014, Mr. Ramachandran sent a letter to the city manager, mayor, and city council members identifying many instances of arbitrary, capricious, and unreasonable interferences with his right to complete his permitted improvements and unequal application of the building code requirements to him. *Id.* ¶ 42. The City ultimately hired an independent inspector to review Mr. Ramachandran's improvements, and the inspector wrote in an October 14, 2014 email to Defendant Ballard that a re-inspection of the carport and accessory building, along with an inspection of the kitchen

3

remodeling, passed inspection. *Id.* ¶¶ 43-44. In 2015, Mr. Ramachandran obtained a permit to replace an exterior door, which was inspected by the City. *Id.* ¶ 46. Mr. Ramachandran alleges that this inspection was a pretext to conduct an illegal search of his property for evidence of other building code violations. *Id.* ¶ 47.

On September 8, 2017, Defendant Ballard sent Mr. Ramachandran an email asking to discuss some complaints. FAC ¶ 66. When Mr. Ramachandran asked for more information, Defendant Ballard replied on September 12, 2017, informing Mr. Ramachandran that he needed to investigate his property, preferably within the next 48 hours, because there had been a complaint regarding unpermitted construction and alterations. *Id.* ¶¶ 67-68. Mr. Ramachandran responded immediately asking for more clarification since the last construction work at the house occurred in 2015 and was approved by the City. *Id.* ¶ 69. Mr. Ramachandran filed a Public Records Act request for copies of the alleged complaints made about his property, but the City failed to produce any record of any complaints. *Id.* ¶ 71.

The relationship between Mr. Ramachandran and his neighbor, Defendant Jacobs, continued to sour. On June 29, 2017, the Jacobs family sued Mr. Ramachandran in state court over a property line dispute between the two houses. FAC ¶ 74. Mr. Ramachandran filed a cross-complaint for battery against Defendant Jacobs's husband stemming from a 2017 incident at the property line. *Id.* On February 25, 2018, Mr. Ramachandran filed a federal action ("first federal lawsuit") against the City and the City Employee Defendants, alleging, among other things, discriminatory enforcement of the building code.[2] FAC ¶ 75. Mr. Ramachandran alleges that these two parallel legal actions created an opportunity for Defendant Jacobs and the City to coordinate and retaliate against him for standing up for himself and challenging the City and his privileged white neighbors. *Id.* ¶ 76. Mr. Ramachandran alleges that the BBK Defendants, Defendant Jacobs, Defendant Ballard, and Defendant Jordan conspired to unlawfully obtain a search warrant for his residence as a pretext to inspect his property in search of code violations and evict a tenant then living on his property. *Id.*

---

[2] Best Best & Krieger represents the City in this first federal lawsuit.

4

On May 28, 2018, Mr. Ramachandran filed a Code Enforcement Complaint identifying several building code violations on Defendant Jacobs's property that he alleged presented fire and safety hazards to him and his adjacent property. FAC ¶ 78. He alleges he submitted photographic evidence of exposed wires along the fence separating the two properties. *Id.* The City dismissed the complaint on June 5, 2018. *Id.* ¶ 79. On July 3, 2018, Defendant Jacobs had her attorney send a letter to Defendant Diaz, a partner at Best Best & Krieger who also serves as the Los Altos City Attorney. *Id.* ¶¶ 5, 80. The letter included a statement of alleged violations on Mr. Ramachandran's property, a list that Mr. Ramachandran insists Defendant Jacobs knew was false and fraudulent. *Id.* ¶ 80.

On August 31, 2018, Defendant Ballad and Defendant Hickey, an attorney at Best Best & Krieger whose practice includes administrative adjudications and code enforcement, obtained a search warrant for Mr. Ramachandran's property. FAC ¶¶ 6, 83. Mr. Ramachandran alleges this warrant was obtained based on the fraudulent declaration of Defendant Ballard, which allegedly contained false statements and material omissions *Id.* ¶¶ 83-94. Defendant Hickey signed an ex-parte application for the warrant and a memorandum of points and authorities that allegedly contained knowingly false statements asserting there was reason to believe there were code violations on Mr. Ramachandran's property. *Id.* ¶¶ 95-96. Defendant Hickey submitted Defendant Ballard's declaration and her memorandum and application, all of which omitted the existence of the pending first federal lawsuit and the fact that Defendant Ballard was a party in that lawsuit. *Id.* ¶ 97.

On September 6, 2018, Defendant Ballard signed a report purportedly based on the search conducted pursuant the warrant. FAC ¶ 102. The report found that the shed was illegally placed and uninhabitable for living purposes. *Id.* The shed was required to be vacated by October 6, 2018. *Id.* Mr. Ramachandran was required to obtain a permit for an accessory dwelling unit ("ADU") and permits to remedy the noncompliant construction within the main residence. *Id.* On the same day, the City posted six notices to vacate, signed by Defendant Ballard, on Mr. Ramachandran's property. *Id.* ¶¶ 104-05. On September 11, 2018, Mr. Ramachandran removed one of the notices, and he was immediately confronted by a city police officer, who cited him

with a misdemeanor for removing the notice. *Id.* ¶ 106. The criminal prosecution was dismissed on October 20, 2020. *Id.* ¶ 140. On September 16, 2018, Mr. Ramachandran's then-attorney notified the City via letter of the false and fraudulent claims in the September 6 report. *Id.* ¶ 103. The letter constituted Mr. Ramachandran's appeal to the findings in the report. *Id.*

Mr. Ramachandran also alleges fourteen other nonwhite families in the City were, like him, subject to a pattern and practice of racial discrimination in which Defendants selectively applied the building code against them, denying them the ability to improve their properties. FAC ¶¶ 110-12.

Mr. Ramachandran initiated this lawsuit on June 3, 2020, more than two years after he filed the first federal lawsuit. *See* Compl., ECF 1.  Four of his claims are before the Court: a First Amendment retaliation claim under 42 U.S.C. § 1983 against all Defendants; a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 against the City Employee Defendants and Defendant Jacobs; a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against all Defendants; and an intentional infliction of emotional distress claim against Defendant Jacobs. FAC ¶¶ 121-137. The BBK Defendants filed their motion to dismiss on August 17, 2020. *See* ECF 45 ("BBK MTD"). The City Employee Defendants filed their motion to dismiss on the same day. *See* ECF 55 ("City Defendants MTD"). Defendant Jacobs filed her motion to dismiss on the same day as well. *See* ECF 58 ("Jacobs MTD").

## II. LEGAL STANDARD

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or

6

1  "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

2  inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation

3  marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported

4  by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

5  at 555).

### B.   Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the Foman factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.* Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

## III.   DISCUSSION

### A.   Request for Judicial Notice

Each of the three groups of Defendants and Mr. Ramachandran have filed requests for judicial notice. See Req. for Judicial Notice ("RJN"), ECF 44, 56, 59, 77, 81, and 95. There is just one objection, by Defendant Jacobs to one request from Mr. Ramachandran, which the Court will address below.

The Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Public records, including judgments and other court documents, are proper subjects of

judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may also judicially notice documents under the incorporation-by-reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.*

The BBK Defendants request the Court judicially notice the misdemeanor complaint filed in *People v. Ramachandran*, No. B1899994 (Santa Clara Cnty. Super. Ct. Nov. 29, 2018) and Los Altos Municipal Code chapters 1.10, 2.03, and 11.10. BBK Defendants RJN, ECF 44. Mr. Ramachandran does not oppose this request. The Court GRANTS the BBK Defendants' requests because the misdemeanor complaint is a court document and the Los Altos Municipal Code is in the public record and its accuracy cannot reasonably be questioned.

The City Employee Defendants request the Court judicially notice fourteen exhibits from the first federal lawsuit between Mr. Ramachandran and the City Employee Defendants, *Ramachandran v. City of Los Altos et al.*, No. 5:18-cv-01223-VKD (N.D. Cal Feb. 25, 2018). *See* City Employee Defendants RJN, ECF 56. The City Employee Defendants also request the Court judicially notice a document prepared by their counsel that purports to highlight the similarities and differences in this case and the first federal lawsuit. Ex. O, ECF 56-15. Mr. Ramachandran does not oppose these requests. The Court GRANTS the City Employees Defendants' request as to the exhibits from the first federal lawsuit, as they are court documents. The Court DENIES the request as to the document prepared by the City Employees Defendants' counsel because the Court does not rely on it to decide this motion. The Court similarly DENIES the City Employee Defendants' request to judicially notice two letters exchanged between their counsel and Mr. Ramachandran's counsel because the Court does not rely on them to decide this motion. Second City Employee Defendants RJN, ECF 81.

Defendant Jacobs requests the Court judicially notice eleven documents from the state

court lawsuit *Jacobs et al. vs. Ramachandran et al.*, No. 17-CV-312418 (Santa Clara Cnty. Super. Ct. June 29, 2017). *See* Defendant Jacobs RJN, Ex. 1-9, 12-13, ECF 59. Ms. Jacobs also asks the Court to judicially notice the exhibits attached to the July 3, 2018 letter Defendant Jacobs sent, through her attorney, to Defendant Diaz, the Los Altos City Attorney, as well as an unredacted copy of the full letter. Ex. 10, Exhibits, ECF 59-10; Ex. 11 Letter, ECF 59-11. Mr. Ramachandran excerpts a portion of the letter in his complaint. FAC ¶ 80. Mr. Ramachandran does not oppose these requests. The Court GRANTS Defendant Jacobs's requests since the state court documents are properly noticeable as court documents and the full letter, including exhibits, is incorporated-by-reference into the complaint.

Finally, Mr. Ramachandran asks the Court to judicially notice Los Altos Municipal Code Section 11.10.060; a September 6, 2018 notice to repair or abate served on Mr. Ramachandran by the City; Los Altos Municipal Code Section 11.10.010; Los Altos Municipal Code Section 11.10.080; an order continuing an administrative appeal hearing before the Office of Administrative Hearings (OAH), *In the Matter of the Appeal of Satish Ramachandran*, OAH No. 2018110904 (Aug. 27, 2020); excerpts from a deposition of Defendant Kornfield; and a September 21, 2017 email from Defendant Jacobs to a city code enforcement officer. *See* Ramachandran RJN, ECF 77. He also asks the Court to judicially notice the summary judgment order in the first federal lawsuit. Second Ramachandran RJN, ECF 95. Defendant Jacobs objects to the request to judicially notice the email for a failure to authenticate the document under Federal Rule of Evidence 901. Jacobs Reply 7, ECF 82. The Court GRANTS Mr. Ramachandran's request as to the Los Altos Municipal Building Code sections and the orders from the OAH and the first federal lawsuit on the basis that these are matters in the public record whose accuracy cannot reasonably be questioned. The Court DENIES Mr. Ramachandran's request to judicially notice the Defendant Kornfield deposition transcript and the email from Defendant Jacobs. The Court notes that noticing these documents would convert this motion into one for summary judgment as they are not matters in the public record. *Khoja*, 899 F.3d at 998.

**B.    BBK Defendants' Motion**

Mr. Ramachandran brings a First Amendment retaliation claim under 42 U.S.C. § 1983

9

and a RICO claim against the BBK Defendants. *See* FAC ¶¶ 121-26, 131-33. The BBK Defendants argue that they are immune from suit and entitled to prosecutorial immunity because they were performing activities closely associated with the judicial process. BBK MTD 6-10. Mr. Ramachandran argues that the BBK Defendants did not follow proper procedure under the Los Altos Municipal Code and are not entitled to prosecutorial immunity for conducting investigative work by obtaining the warrant to inspect his property and the consequences that flowed from that, including the September 2018 notices to vacate and subsequent misdemeanor prosecution for removing a notice. Opp'n 15-20. Mr. Ramachandran also argues that Best Best & Krieger is liable for the Section 1983 claim under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) because Defendant Diaz "acted as a final policy maker for Defendant BB&K in his capacity as City Attorney for Los Altos." Opp'n 25. The Court agrees with the BBK Defendants that their conduct was prosecutorial, not investigative, and thus they are entitled to prosecutorial immunity.[3]

"Prosecutors are extended absolute immunity from damages when performing activities closely associated with the judicial process." *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999). This immunity applies to initiating a judicial proceeding, including administrative acts, and presenting evidence in support of a search warrant application. *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012), *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009). "Absolute immunity also protects those functions in which the prosecutor acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Lacey*, 693 F.3d at 912 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Prosecutorial immunity has been extended to state administrative officials who perform functions analogous to those as a prosecutor. *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984). The intent of the prosecutor plays no role in the immunity inquiry. *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987) (finding allegations that prosecutors filed criminal charges knowing that the statute of limitations had run covered by prosecutorial immunity); *see also Burns*, 500

---

[3] It does not appear on the face of the FAC that Mr. Ramachandran has alleged any facts against Best Best & Krieger to support an unlawful and long-standing practice or policy as required in order to support *Monell* liability. Mr. Ramachandran discusses *Monell* liability at page 25 of his opposition brief, but he cites no paragraph of the FAC to support that claim.

1  U.S. at 489-50 (presenting false testimony in support of a search warrant covered by absolute
2  immunity). Prosecutorial immunity applies to conspiracy allegations as well. *Ashelman v. Pope*,
3  793 F.2d 1072, 1078 (9th Cir. 1986).

4  In *VNT Prop. 1, LLC v. City of Buena Park*, the court found a defendant, who was acting
5  as city attorney, and his law firm were entitled to prosecutorial immunity for serving
6  administrative notices of building code violations on a property and ordering it vacated. No. SA
7  CV 15-0007-DOC (RNBx), 2015 WL 12762257, at *5-*6 (C.D. Cal. Aug. 11, 2015). "Defendants
8  Palmer and Jones & Mayers purported red-tagging of the Property on November 25, 2013 'fell
9  within their prosecution of the City's enforcement action against Plaintiffs,' and their conduct was
10 'intimately associated with the judicial phase' of the proceedings 'and thus were functions to
11 which the reasons for absolute immunity apply with full force.'" *Id.* at *5. (quoting *Spitzer v.
12 Aljoe*, No. 13-CV-05442-MEJ, 2014 WL 1154165, at *12 (N.D. Cal. Mar. 20, 2014)). The court
13 also found that prosecutorial immunity extended to defendants allegedly unlawfully obtaining an
14 inspection warrant. *VNT Prop. 1*, 2015 WL 12762257, at *6. "Generally, the application of a
15 warrant is closely related to the prosecutorial role protected by prosecutorial immunity." *Id.* (citing
16 *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997)). All federal claims were dismissed against the
17 Defendants with prejudice. *VNT Prop. 1*, 2015 WL 12762257, at *6.

18 The Court finds the facts here analogous to the facts in *VNT Prop. 1*. Mr. Ramachandran
19 accuses Defendant Hickey of seeking and obtaining a search warrant for his property "based upon
20 the fraudulent declaration of Defendant Ballard." FAC ¶ 83. Defendant Hickey was not acting as
21 the complaining witness, but rather as an officer of the court performing a function intimately
22 associated with the judicial phase of the proceedings. Accordingly, she is entitled to absolute
23 immunity. The Court also has no trouble finding Defendant Hickey covered by prosecutorial
24 immunity against Mr. Ramachandran's charge that she is criminally prosecuting him for removing
25 one of the notices to vacate from his property. FAC ¶ 106.

26 Mr. Ramachandran alleges that Defendant Diaz was responsible for procuring the search
27 warrant as well. FAC ¶¶ 77, 107-09. Mr. Ramachandran does not allege that Defendant Diaz acted
28 as the complaining witness. Mr. Ramachandran alleges that all BBK Defendants were involved

11

1   with the administrative code enforcement activities taken against his property, FAC ¶ 101, which
2   qualify as activity covered under prosecutorial immunity. *See VNT Prop. 1*, 2015 WL 12762257,
3   at \*6; *Spitzer*, 2014 WL 1154165, at \*12.
4         The Court does not find Mr. Ramachandran's reading of the Los Altos Municipal Code
5   persuasive. Opp'n 15-17. Both the notice to vacate and Section 11.10.180(A) of the municipal
6   code plainly contain the authority to pursue misdemeanor charges. Ex. 3, Notice; Ex. 4, Municipal
7   Code Section 11.10.180, ECF 77. Mr. Ramachandran has not identified any authority that
8   indicates this ability is suspended or paused when someone appeals a notice, as he suggests. Opp'n
9   18 n.1. The Court also not persuaded by Mr. Ramachandran's attempts to distinguish *VNT Prop.*
10  *1*. Opp'n 18-19. The fact that the penalties resulting from "red-tagging" a property are more severe
11  than those for posting a notice of violation to a property does not change the case's holding that
12  enforcing municipal code violations and obtaining search warrants are actions covered by
13  prosecutorial immunity. *VNT Prop. 1*, 2015 WL 12762257, at \*5-\*6. The BBK defendants were
14  acting as "advocate[s] for the State," even though their actions against Mr. Ramachandran's
15  property "involve actions preliminary to the initiation of a prosecution and actions apart from the
16  courtroom." *Lacey*, 693 F.3d at 912. Accordingly, all claims against the BBK Defendants are
17  DISMISSED WITH PREJUDICE since no amendment could negate their prosecutorial immunity.
18      **C.**    **City Employee Defendants' Motion**
19        Mr. Ramachandran asserts a First Amendment retaliation claim under 42 U.S.C. § 1983, a
20  Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983, and a RICO claim against
21  the City Employee Defendants. *See* FAC ¶¶ 121-133. The City Employee Defendants argue that
22  all claims against them should be dismissed under the claim splitting doctrine since Mr.
23  Ramachandran's first federal lawsuit arises from the same incident and same facts. City
24  Defendants MTD 10-17. Mr. Ramachandran concedes that "case number one and the instant case
25  are based on essentially the same pertinent facts and seek the same damages with some exceptions."
26  Opp'n 35. The Court finds dismissal of all three claims against the City Employee Defendants proper.
27        "A main purpose behind the rule preventing claim splitting is to protect the defendant from
28  being harassed by repetitive actions based on the same claim*." Clements v. Airport Authority of*

*Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995) (internal quotations and citations omitted). "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *rev'd on other grounds*, *Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) (internal quotations and citations omitted). "There would be no end to litigation if such a practice were permissible." *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894). The claims do not have to be identical in both lawsuits for the claim-splitting doctrine to apply. *Lenk v. Monolithic Power Sys., Inc.*, No. 16-CV-02625-BLF, 2017 WL 1832198, at *3 (N.D. Cal. May 8, 2017), *aff'd*, 754 F. App'x 554 (9th Cir. 2018) ("[r]es judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action.") (citing *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)).

    Courts use the claim preclusion test to determine if lawsuits are duplicative. *Adams*, 487, F.3d at 688. "[T]he Court examines whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* The first question entails a further four-prong transaction test that asks: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Id.* (citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). "The last of these criteria is the most important." *Costantini*, 681 F.2d at 1202.

    Here, there is no question that the City Employee Defendants and Mr. Ramachandran are adverse parties in both actions. Ex. A, Fourth Am. Compl. ("4AC"), ECF 56-1. The Court now turns to the four-prong transaction test, starting with the most important factor.

    **i.    The Two Suits Arise out of the Same Transactional Nucleus of Facts**

    "Whether two events are part of the same transaction or series [of transactions] depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992). Any claims that were

raised or could have been raised in the prior action are barred by claim preclusion. *Lenk*, 2017 WL 1832198, at *3.

Here, Mr. Ramachandran has conceded that "[t]he same 'transactions(s) or event(s)' predominate both actions" in a June 23, 2020 motion to relate filed in the first federal lawsuit. Ex. L, Mot. to Relate 2, ECF 56-12. "Specifically, both actions allege racial discrimination and retaliation against Plaintiff by the City of Los Altos and its officials/employees Kirk Ballard, David Kornfield and Christopher Jordan." *Id.* The fact that Mr. Ramachandran tried to relate the cases also serves as a concession on his part that the cases could conveniently be tried together.

The denial of the relation motion by Judge Virginia K. DeMarchi, the presiding judge in the first federal lawsuit, came after she had denied in part Mr. Ramachandran's motion for leave to file a fourth amended complaint to add the BBK Defendants and Defendant Jacobs to the first federal lawsuit. Ex. J., Order Denying Leave, ECF 56-10. She denied the motion on the grounds of prejudice to the City Employee Defendants, who had already spent two years litigating the case. *Id.* 11-14. In that April 20, 2020 order, Judge DeMarchi found that the new RICO and intentional infliction of emotional distress claims did rely on some of the same facts underlying the Section 1983 claims but ultimately decided not to allow amendment because Mr. Ramachandran unjustifiably waited over a year to amend his complaint, resulting in prejudice to the City Employee Defendants. *Id.* 10, 13-15. In denying Mr. Ramachandran's later motion to relate the two cases, Judge DeMarchi noted that he had declined to consent to magistrate judge jurisdiction in this second filed action. Ex. M., Order Denying Mot. to Relate 2, ECF 56-13. "[T]he fact that plaintiff was denied leave to amend does not give [him] the right to file a second lawsuit based on the same facts." *Adams*, 487 F.3d at 688.

Mr. Ramachandran has pled his RICO claim as predicated on the same transactional nucleus of facts as his Section 1983 claims against the City Employee Defendants. FAC ¶ 132. And the Court agrees with Mr. Ramachandran's characterization of both lawsuits as arising out of the same transactions and events. *See* Mot. to Relate. Accordingly, the Court finds that both lawsuits arise out of the same transactional nucleus of facts.

      **ii.**    **The Two Lawsuits Involve Infringement of the Same Right**

14

Since the two Section 1983 claims asserted in both lawsuits against the City Employee Defendants are identical, the only question is whether Mr. Ramachandran's RICO claim involves the same right. The RICO claim is predicated on a scheme resulting in an injury to his property rights and his ability to develop his property to produce rental income. FAC ¶¶ 132-33. In the first federal lawsuit, Mr. Ramachandran claims an injury to his property rights. 4AC ¶¶ 16-17, 71(e) ("…prevent Plaintiff from conducting the business of renting his converted garage as a dwelling unit to deprive Plaintiff of rental income and damage his property."), 88, 93. Accordingly, the Court finds that the two lawsuit involve infringement of the same right.

### iii. Substantially the Same Evidence is Presented in Both Lawsuits

Since Mr. Ramachandran's RICO claim relies on the same underlying conduct pled in the first federal lawsuit, much of the evidence in both suits would be duplicative. Mr. Ramachandran references the same email exchanges, letters, and alleged wrongful administrative actions against his property. *Compare* FAC ¶¶ 17-48 (describing Mr. Ramachandran's 2013-2015 renovation projects) *with* 4AC ¶¶ 10-37 (same); FAC ¶¶ 49-73 (describing Defendant Jacobs's renovation projects and Mr. Ramachandran's subsequent complaints) *with* 4AC ¶¶ 38-61 (same); FAC ¶¶ 74-98, 102-109 (describing Defendant Jacobs's July 3, 2018 letter that allegedly led to an illegal search, notices to vacate, and a criminal prosecution) *with* 4AC ¶¶ 62-76 (same); FAC ¶¶ 110-12 (describing Los Altos's history and pattern of equal protection violations against non-white homeowners); *with* 4AC ¶¶ 77-79 (same). Accordingly, the Court finds that substantially the same evidence is presented in both lawsuits.

### iv. Conclusion

As for the final factor, whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, the Court finds that this factor does not clearly counsel whether the two lawsuits are duplicative. However, the test is not to be applied "mechanistically," and the Court finds that the other factors, including the most important factor, establish that the claim-splitting doctrine applies. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) ("We have often held the common nucleus criterion to be outcome determinative under the first res judicata element"), *Anguiano-Tamayo v. Wal-Mart Assocs., Inc.*,

15

No. 18-CV-04598-JSC, 2019 WL 359417, at *6 (N.D. Cal. Jan. 29, 2019) ("And although it is not clear that any judgment in the instant action could potentially 'destroy or impair rights' any rights yet to be established in *Magadia*, that factor is not dispositive."). Accordingly, the Court finds that the claim-splitting doctrine bars all three claims in this lawsuit against the City Employee Defendants. Since amendment cannot cure this deficiency, the claims against the City Employee Defendants are DISMISSED WITH PREJUDICE.

### D. Defendant Jacobs's Motion

Mr. Ramachandran asserts all four claims against Defendant Jacobs: a First Amendment retaliation claim under 42 U.S.C. § 1983, a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983, a RICO claim, and a claim for intentional infliction of emotional distress. *See* FAC ¶¶ 121-137. Defendant Jacobs argues that the intentional infliction of emotional distress claim is barred by the claim-splitting doctrine because it could have been raised in the 2017 state court lawsuit between the two parties. Jacobs MTD 22-24. Additionally, she argues that Mr. Ramachandran's failure to address the intentional infliction of emotional distress claim in his opposition brief means it is waived. Reply 1-2, ECF 82. Defendant Jacobs argues the other three claims are protected by the *Noerr-Pennington* doctrine, which protects a person's right to petition the government for a redress of grievances. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The Court agrees with Ms. Jacobs that all claims against her should be dismissed.

#### i. The Intentional Infliction of Emotional Distress Claim is Abandoned

While addressing the claim-splitting doctrine in his opposition brief, Mr. Ramachandran focuses only on the first federal lawsuit, and Defendant Jacobs is not a party to that suit. *See* Opp'n 35-36. He also fails to address Defendant Jacobs's argument that he has failed to plead any requisite outrageous conduct to support this claim. The Court finds that Mr. Ramachandran abandoned this claim. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition."), *Ramirez v. Manpower, Inc.*, No. 5:13-CV-2880-EJD, 2014 WL 116531, at *6 (N.D. Cal. Jan. 13, 2014) (citing *Jenkins* and finding claims not addressed in opposition to motion to dismiss abandoned). Dismissal with prejudice follows when a claim is abandoned. *Homsey v. Bank of America, N.A.*,

16

No. 13-01608 LB, 2013 WL 2422781, at *4 (N.D. Cal. June 3, 2019) (dismissing abandoned claim with prejudice). Accordingly, the intentional infliction of emotional distress claim against Defendant Jacobs is DISMISSED WITH PREJUDICE. Moreover, the Court agrees with Defendant Jacobs that Mr. Ramachandran has failed to allege outrageous conduct. His claims against Defendant Jacobs center on her alleged installation of security cameras on her own property, FAC ¶ 63, and filing written complaints against him with the City. Whether she was right or wrong in her complaints, she undoubtedly has pursued the civilized course of conduct by seeking City enforcement of local laws rather than self-help. Such conduct cannot plausibly be seen as exceeding the bounds of that usually tolerated in a civilized community.

### ii. The *Noerr-Pennington* Doctrine Bars Remaining Claims against Defendant Jacobs

When neighbors who share a fence have a property dispute, options for resolution are limited. One option is fisticuffs, which, unfortunately, Mr. Ramachandran previously alleged in a state court lawsuit detailing a June 2017 incident with Defendant Jacobs's husband. Ex. 1, Cross-Complaint ¶¶ 38-42, ECF 59-1. Another, more peaceful option is to petition the local government to intervene. Understandably, the law encourages the latter.

"Under the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)). Courts must give "adequate breathing space to the right of petition" and "must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931 (internal quotations and citations omitted). The Ninth Circuit has found that *Noerr–Pennington* applies against both Section 1983 claims and RICO claims. *Sosa*, 437 F.3d at 931-32 (applying to RICO claim), *Boulware v. Nev. Dep't of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992) (applying to Section 1983). Pre-litigation demand letters are covered by the doctrine as well. *Sosa*, 437 F.3d at 931.

Defendant Jacobs sent a letter, through her lawyer, to Defendant Diaz, the City Attorney,

17

1   demanding that the City take action against the code violations allegedly present on Mr.
2   Ramachandran's property. Ex. 11, July 2, 2018 Letter 1, ECF 59-11. This is petitioning conduct in
3   its purest form. Mr. Ramachandran's lawsuit plainly imposes a burden on Defendant Jacobs's
4   petitioning rights. Nevertheless, Mr. Ramachandran argues that *Noerr–Pennington* does not apply
5   for several reasons.[4] First, he argues that Defendant Jacobs's installation of twelve video cameras
6   in her yard, which allegedly monitor his house, is not petitioning activity covered by *Noerr–*
7   *Pennington*. Opp'n 22; FAC ¶ 63. Accepting all well-pled facts as true and drawing all inferences
8   in favor of Mr. Ramachandran, as the Court must do, the Court does not find that this allegation
9   relates to either Section 1983 claim or the RICO claim. Mr. Ramachandran alleges that the
10  installation of the cameras violates his privacy. FAC ¶ 63. This allegation, taken as true, cannot
11  establish either Section 1983 claim or the RICO claim. This allegation may have supported the
12  intentional infliction of emotional distress claim, but that is irrelevant because that claim has been
13  abandoned, and, in any case, the allegation does not rise to the level of outrageous behavior.
14  Accordingly, the Court does not find that this allegation prevents the application of the *Noerr–*
15  *Pennington* doctrine.
16       Next, Mr. Ramachandran argues that Defendant Jacobs's petitioning conduct is not
17  protected by *Noerr–Pennington* because it falls into the exception for sham litigation. Opp'n 22-
18  23. Mr. Ramachandran argues that the summary of alleged violations in Defendant Jacobs's July
19  3, 2018 letter was false and fraudulent and that she knew this when she had the letter sent. *Id.* It is
20  true that "objectively baseless" claims are not covered under *Noerr–Pennington*. *Sosa*, 437 F.3d at
21  938. However, it is not plausible to argue that Defendant Jacobs's pre-suit demand letter was
22  objectively baseless because that allegation contradicts matters properly subject to judicial notice.
23  Mr. Ramachandran incorporated excerpts of Defendant Jacobs's July 3, 2018 letter into his
24  complaint. FAC ¶ 80. Defendant Jacobs has requested the Court take judicial notice of the full
25  letter and its 21 exhibits. This is proper under the incorporation-by-reference doctrine. *Khoja*, 899

---

[4] Mr. Ramachandran apparently does not appreciate the irony of suing Ms. Jacobs for petitioning the local government while also suing the Defendants in this case for retaliation after he petitioned the local government.

1   F.3d at 1002 ("The doctrine prevents plaintiffs from selecting only portions of documents that
2   support their claims, while omitting portions of those very documents that weaken—or doom—
3   their claims."). Based on the copious number of photographs submitted in support of the demand
4   letter, and the content of the photographs, the only valid conclusion is that Defendant Jacobs had a
5   basis for sending the letter. If "[t]he goal of a true sham litigation is to force a result other than that
6   for which the causes of action involved were designed," then Defendant Jacobs's letter clearly was
7   no sham, as there can be no argument that it was aimed to force the City to remedy the alleged
8   code violations on Mr. Ramachandran's property. *Menjivar v. Trophy Properties IV DE, LLC*, No.
9   C 06-03086 SI, 2006 WL 2884396, at *18 (N.D. Cal. Oct. 10, 2006) (citing *Freeman v. Lasky,*
10  *Haas, & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005)).

11  "The sham litigation exception does not apply so long as the party 'was genuinely seeking
12  governmental action.'" *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 980 (N.D.
13  Cal. 2019), (quoting *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991)). The
14  Court finds the only plausible inference from the complaint and judicially noticed documents is
15  that Defendant Jacobs was genuinely seeking government action. Accordingly, the remaining
16  claims against Defendant Jacobs are barred by the *Noerr–Pennington* doctrine and, since no
17  amendment could cure this deficiency, the claims are DISMISSED WITH PREJUDICE.

19  **IV.    ORDER**
20          For the foregoing reasons, IT IS HEREBY ORDERED that Mr. Ramachandran's claims
21  for First Amendment retaliation under 42 U.S.C. § 1983 against all Defendants; Fourteenth
22  Amendment equal protection under 42 U.S.C. § 1983 against the City Employee Defendants and
23  Defendant Jacobs; RICO against all Defendants; and an intentional infliction of emotional distress
24  against Defendant Jacobs are DISMISSED WITH PREJUDICE. The only remaining claim is
25  claim five for Malicious Prosecution under 42 U.S.C. § 1983. That claim was not the subject of
26  these motions and the Court offers no comment on its validity.

Dated: February 8, 2021

_____
BETH LABSON FREEMAN
United States District Judge